SHONINGER *v.* UNITED STATES (No. 563).[1]

VEGETABLE FIBER, PARAGRAPH 349, TARIFF ACT OF 1909.

Cotton is a vegetable fiber, and merchandise composed of cotton net, if embroidered with a design in artificial silk, cotton being the component of chief value, falls for dutiable purposes within the last proviso of paragraph 349, tariff act of 1909, namely, that no article or fabric of any description composed of flax or other vegetable fiber, or of which these materials or any of them is the component of chief value, when embroidered shall pay a less duty than the duty there fixed.

United States Court of Customs Appeals, May 29, 1911.

APPEAL from Board of United States General Appraisers, G. A. 7127 (T. D. 31087).

[Affirmed.]

*Comstock & Washburn* (*Albert H. Washburn* of counsel) for appellant.

*D. Frank Lloyd,* Assistant Attorney General (*Thomas J. Doherty* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

This case relates to merchandise consisting of embroideries composed of cotton net embroidered with a design in artificial silk,

---

[1] Reported in T. D. 31661 (20 Treas. Dec., 1179).

cotton being the component material of chief value. The protest covered also certain other merchandise, but the other questions thus raised are no longer at issue between the parties.

The case is controlled by the tariff act of 1909. The collector assessed the importation at 45 cents per pound, and in addition thereto 60 per cent ad valorem, being the same rate as that provided for embroideries composed wholly or in chief value of artificial silk, under the concluding provision of paragraph 349, construed together with paragraph 405. The appellants protested against this ruling, and contended that the merchandise in question was dutiable at 60 per cent ad valorem under the provisions contained in the main body of paragraph 349. The protest was duly heard by the Board of General Appraisers, and was overruled. The appellants now pray for a reversal of the board's decision.

At the hearing before the board the parties dispensed with the production of witnesses and entered in the record a stipulation as to the facts, reciting that—

the merchandise in question consists of embroideries composed of cotton net embroidered with a design in artificial silk * * * and that cotton is the component material of chief value.

The issue depends upon the construction of paragraphs 349 and 405 of the act of 1909; they are therefore copied in full.

349. Laces, lace window curtains, and all other lace articles, handkerchiefs, napkins, wearing apparel, and all other articles made wholly or in part of lace or laces, or in imitation of lace; nets, nettings, veils, veilings, neck rufflings, ruchings, tuckings, flutings, quillings, embroideries, trimmings, braids, featherstitch braids, edgings, insertings, flouncings, galloons, gorings, bands, bandings, belts, beltings, bindings, cords, ornaments, ribbons, tapes, webs, and webbings; wearing apparel, handkerchiefs, and other articles or fabrics embroidered in any manner by hand or machinery, whether with a plain or fancy letter, initial, or monogram, or otherwise, or tamboured, appliquéed or scalloped, by hand or machinery, for any purpose, or from which threads have been drawn, cut, or punched to produce openwork; ornamented or embroidered in any manner herein described, in any part thereof, however small; hemstitched or tucked flouncings or skirtings; all of the foregoing composed wholly or in chief value of cotton, flax, or other vegetable fiber, or of cotton, flax, or other vegetable fiber and india rubber, or of cotton, flax, or other vegetable fiber, india rubber, and metal, and not elsewhere specially provided for in this section, sixty per centum ad valorem: *Provided,* That no article composed wholly or in chief value of one or more of the materials or goods specified in this paragraph, shall pay a less rate of duty than the goods of which the same is composed: *And provided further,* That no article or fabric of any description, composed of flax or other vegetable fiber, or of which these materials or any of them is the component material of chief value, when embroidered by hand or machinery, or having hand or machinery embroidery thereon, shall pay a less rate of duty than that imposed in this section upon any embroideries of the materials of which such embroidery is composed.

405. Yarns, threads, filaments of artificial or imitation silk, or of artificial or imitation horsehair, by whatever name known, and by whatever process made, if in the form of singles, forty-five cents per pound; if in the form of tram, fifty cents per pound; if in the form of organzine, sixty cents per pound: *Provided,* That in no case shall any

yarns, threads, or filaments of artificial or imitation silk or imitation horsehair, or any yarns, threads, or filaments made from waste of such materials, pay a less rate of duty than thirty per centum ad valorem; braids, laces, embroideries, galloons, neck rufflings, ruchings, fringes, trimmings, beltings, cords, tassels, ribbons, or other articles or fabrics composed wholly or in chief value of yarns, threads, filaments, or fibers of artificial or imitation silk or of artificial or imitation horsehair, by whatever name known, and by whatever process made, forty-five cents per pound, and in addition thereto sixty per centum ad valorem.

As will be observed from the foregoing copies, paragraph 349 in its concluding sentence provides that no article or fabric of any description composed of flax or other vegetable fiber, or of which these materials or any of them is the component material of chief value, when embroidered, shall pay a less rate of duty than that imposed in the act upon any embroideries of the materials of which such embroidery is composed. This enactment is in the form of a proviso to the paragraph, but in its real force and effect it is an independent provision which by reference establishes a minimum rate of duty for the articles named within its descriptive terms. That minimum rate of duty is undoubtedly the same rate as that assessed by the collector upon the articles involved in this case. Therefore the only real question in the case is this: Are these goods covered by the description contained in the concluding clause of paragraph 349; that is, are they composed of "flax or other vegetable fiber"?

Of course the goods contain no flax; therefore the question is really limited to "vegetable fiber."

The article in question is composed in chief bulk and also in chief value of cotton, which is not only a vegetable fiber, but is in fact the best known and most important vegetable fiber in the world. Therefore the descriptive term "vegetable fiber" would clearly include the article at bar unless the natural and ordinary meaning of the term is to be limited and controlled by some other provisions of the act.

The appellants contend that a consideration of the entire paragraph in question discloses that Congress did not intend to include cotton within the class "vegetable fiber," as therein used, and that cotton is mentioned *eo nomine* or by direct reference in the paragraph whenever it is intended to be included. The body of paragraph 349 deals with many articles which have a general similarity to the merchandise in question, and in naming the component material thereof cotton is three times mentioned by name and once by unmistakable reference. The first mention of component materials in the paragraph reads "composed wholly or in chief value of cotton, flax, or other vegetable fiber"; the next one reads "or of cotton, flax, or other vegetable fiber, and india rubber"; the next reads "or of cotton, flax, or other vegetable fiber, india rubber and metal," and the first general reference to component materials is in the following language, "one or more of the materials or goods specified in this paragraph."

It may be noted again that the concluding provision of the paragraph, being the one under review, mentions as the component materials of the articles covered by it only "flax or other vegetable fiber." Appellants contend that the mention of cotton *eo nomine* in conjunction with "other vegetable fiber" in the body of the paragraph indicates a legislative purpose to use the term "vegetable fiber" as exclusive of cotton, and therefore that the term "vegetable fiber" in the concluding provision, used alone and without mention of cotton *eo nomine*, should be construed to mean vegetable fiber except cotton. The argument is that Congress would not have mentioned cotton *eo nomine* in conjunction with other vegetable fiber in the body of the paragraph unless it was intended to imply thereby that the term "vegetable fiber" as used in the paragraph did not *ex proprio vigore* include cotton.

This argument, however, is answered by several considerations. In the first place the term "vegetable fiber," in its ordinary and correct meaning, includes cotton, and there appears to be no substantial reason why Congress should have intended to use it here in any different sense. The argument of appellants depends wholly upon mere verbal construction. In the next place, whenever cotton is named in the paragraph it is named definitively as a vegetable fiber. It is not contradistinguished from vegetable fibers, but distinctly and in terms classified as one of them, the expression being "cotton or other vegetable fiber." This use gives to vegetable fiber a definition which includes rather than excludes cotton. The construction does not imply that cotton is a thing outside of or apart from vegetable fiber, which must therefore be mentioned specifically in order to be included, but rather that cotton is itself a vegetable fiber, and that wherever it is specifically named in the provision it is done out of mere abundance of caution and at the risk of tautology.

In the vermuth case cited by counsel for appellants a different construction presents itself. Vermuth was in a general sense a kind of wine, and yet in composition and use was peculiar, being an article somewhat of its own class. One of the paragraphs in the act of 1897 made provision for "still wines, including ginger wine or ginger cordial and vermuth," and also for "any wines, ginger cordial or vermuth," and also provided that no allowance should be made for "leakage or damage on wines, liquors, cordials, or distilled spirits." It was held that the latter provision did not cover leakage of vermuth, inasmuch as it was not included therein by name, and the paragraph by naming vermuth separately in the manner above appearing had not included it within the general terms "wines, liquors, cordials, or distilled spirits." In the reviewing court the decision was affirmed upon the additional grounds that vermuth was not known as wine, either commercially or popularly, and an earlier decision to that effect was cited.

In the present case cotton is undoubtedly a vegetable fiber and is indeed the one which is best known and most universally used, and the paragraph under review recognizes this by its repeated reference to "cotton or other vegetable fiber," and therefore we hold it to be included within the meaning of that term as used in the last clause of paragraph 349. In this view of the case the assessment was correct, and therefore the decision of the board is *affirmed.*